**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GUN OWNERS OF AMERICA, INC., et al. <br><br>      Plaintiffs, <br><br>      v. <br><br> FEDERAL BUREAU OF INVESTIGATION, <br>      Defendant. | Civil Action No. 21-1601 (JDB) |

## MEMORANDUM OPINION

Plaintiffs seek to compel the Federal Bureau of Investigation to comply with four requests for records under the Freedom of Information Act ("FOIA").  The FBI denied three of the requests on the ground that they failed to reasonably describe the documents sought, and it now moves to dismiss plaintiffs' complaint with respect to those three requests for the same reason.  The Court will grant in part and deny in part the FBI's motion.

## Background

Gun Owners of America, Inc. and Gun Owners Foundation are Virginia non-profit organizations.  Compl. [ECF No. 1] ¶¶ 3–4.  Gun Owners of America "seeks to promote social welfare through informing and educating the public on and conducting activities in defense of the Second Amendment and the right to keep and bear arms," id. ¶ 3, while Gun Owners Foundation is "a nonprofit legal defense and educational foundation . . . . supported by gun owners across the country," id. ¶ 4.  On March 15, 2021, the two organizations jointly filed four FOIA requests with the FBI, seeking records related to Virginia's procedures for conducting background checks prior to purchasing a firearm.  Id. ¶ 7; see also Compl. Ex. A [ECF No. 1-1].  Specifically, plaintiffs requested:

1

- Request 1 – "records of all communications between the FBI and the Governor of Virginia, the Office of the Governor of Virginia, the Lieutenant Governor of Virginia, the Office of the Lieutenant Governor of Virginia, the Attorney General of Virginia, the Virginia Office of the Attorney General, and agents and employees of the same that occurred between January 11, 2014 until the date you begin to process this request";

- Request 2 – "records of all communications between the FBI and the Virginia Department of State Police involving the so-called 'voluntary background check' established by Va. Code Section 54.1-4201.2, or a so-called 'special permit for voluntary background check' or 'firearms-related permit' to be established by the executive branch of government in Virginia, that occurred between July 1, 2015 until the date you begin to process this request";

- Request 3 – "records related to whether Virginia's voluntary background check system and its implementation complies with 28 C.F.R. Section 25.6";

- Request 4 – "copies of the last four National Instant Criminal Background Check System audits conducted by the FBI's Criminal Justice Information Services Division with respect to the Commonwealth of Virginia."

Compl. Ex. A at 1–2 (footnote omitted).[1]

The FBI acknowledged Request 4 and queued it for processing, Compl. Ex. B [ECF No. 1-2] at 2–3,[2] but it denied Requests 1, 2, and 3 on March 24, 2021, Compl. ¶¶ 8–11; Compl. Ex. B at 4–8. According to the FBI, Request 1 is "overly broad and . . . does not provide enough detail to enable personnel to locate records 'with a reasonable amount of effort,'" Compl. Ex. B at 4; Request 2 "does not contain enough descriptive information to permit a search of [the FBI's] records," id. at 6; and Request 3 "do[es] not comply with the FOIA" because "[t]he FOIA does not require federal agencies to answer inquiries, create records, conduct research, or draw conclusions concerning queried data," id. at 8.

Plaintiffs administratively appealed this decision on April 9, 2021, Compl. ¶ 12; Compl. Ex. C [ECF No. 1-3], but they did not receive a decision on their appeal within the twenty days

---

[1] The Court will refer to these requests by the Arabic numerals given above, but these are not their official designations: the FBI assigned each request a processing number upon receipt. To avoid any confusion, Request 1 is No. NFP-128736; Request 2 is No. NFP-128737; Request 3 is No. NFP-128738; and Request 4 is No. 1492370-00. See, e.g., Compl. Ex. C [ECF No. 1-3].

[2] Unlike Exhibits A and C, Exhibit B does not contain internal pagination. Accordingly, the Court will use the page numbers automatically generated by the CM/ECF system and located in the top right corner of each page for Exhibit B, but it will use the documents' own internal pagination for Exhibits A and C.

required by statute, Compl. ¶¶ 15, 17; <u>see</u> 5 U.S.C. § 552(a)(6)(A)(ii).  Nor has the FBI issued a

decision regarding compliance with Request 4, also in violation of a twenty-day deadline.  Compl.

¶ 16; <u>see</u> 5 U.S.C. § 552(a)(6)(A)(i).  Accordingly, plaintiffs brought the instant suit pursuant to 5

U.S.C. § 552(a)(4)(B) on June 11, 2021, alleging that the FBI is improperly withholding agency

records and asking the Court to order the agency to search for and produce "any and all non-exempt

records responsive to Plaintiffs' FOIA request."  Compl. at 5.

The FBI then moved to dismiss plaintiffs' complaint in part.  <u>See</u> Mem. of P. & A. in Supp.

of Def.'s Partial Mot. to Dismiss [ECF No. 5] ("Def.'s Mot.").  The FBI contends that its initial

denials of Requests 1, 2, and 3 were proper: the requests "fail to reasonably describe the records

they seek or . . . impose unreasonable burdens on the FBI."  <u>Id.</u> at 4.  And since plaintiffs did not

"[p]resent[] a legally proper FOIA request," the FBI argues, they have failed to state a claim under

FOIA.  <u>Id.</u>  Plaintiffs, naturally, oppose this motion, maintaining that their requests are sufficiently

specific and satisfy FOIA's reasonable-description requirement.  <u>See generally</u> Pls.' Resp. to

Def.'s Mot. [ECF No. 6] ("Pls.' Opp'n").  The motion is now fully briefed and ripe for decision.

## <u>Legal Standard</u>

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "'a short and plain

statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant

fair notice of what the . . . claim is and the grounds upon which it rests.'"  <u>Bell Atl. Corp. v.</u>

<u>Twombly</u>, 550 U.S. 544, 555 (2007) (alteration in original) (quoting <u>Conley v. Gibson</u>, 355 U.S.

41, 47 (1957)).  The "complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting

<u>Twombly</u>, 550 U.S. at 570); <u>accord</u> <u>Atherton v. D.C. Off. of Mayor</u>, 567 F.3d 672, 681 (D.C. Cir.

2009).  In deciding a Rule 12(b)(6) motion, the court must "take as true all well-pled factual

allegations within [the plaintiff's] complaint" while also "disregard[ing] any legal conclusions, legal contentions couched as factual allegations, and unsupported factual allegations within the complaint." Gulf Coast Mar. Supply, Inc. v. United States, 867 F.3d 123, 128 (D.C. Cir. 2017). A Rule 12(b)(6) motion "must be decided only on the basis of the facts alleged in the complaint, any documents either attached to or incorporated in the complaint, and matters of which the court may take judicial notice." Galvin v. Del Toro, Civ. A. No. 21-1813 (JDB), 2022 WL 503773, at *4 (D.D.C. Feb. 18, 2022) (internal quotation marks and citation omitted).

The Freedom of Information Act mandates that, upon request, federal agencies "shall make . . . records promptly available to any person" so long as the request "(i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed." 5 U.S.C. § 552(a)(3)(A). Courts in this District "ha[ve] jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." Id. § 552(a)(4)(B). Thus, "[j]urisdiction under FOIA requires 'a showing that an agency has (1) improperly; (2) withheld; (3) agency records.'" Competitive Enter. Inst. v. Off. of Sci. & Tech. Pol'y, 827 F.3d 145, 147 (D.C. Cir. 2016) (some internal quotation marks omitted) (quoting Kissinger v. Reps. Comm. for Freedom of Press, 445 U.S. 136, 150 (1980)).

An agency's decision to withhold agency records is not improper if it has not "receive[d] a request that 'reasonably describes such records.'" Evans v. Fed. Bureau of Prisons, 951 F.3d 578, 583 (D.C. Cir. 2020) (quoting 5 U.S.C. § 552(a)(3)(A)). "[A FOIA] request 'reasonably describes' agency records when it 'would be sufficient to enable a professional employee of the agency who was familiar with the subject area of the request to locate the record with a reasonable amount of effort.'" Am. Ctr. for L. & Just. v. U.S. Dep't of Homeland Sec., Case No. 1:21-cv-

01364 (TNM), 2021 WL 5231939, at *3 (D.D.C. Nov. 10, 2021) (alteration omitted) (quoting

Truitt v. Dep't of State, 897 F.2d 540, 545 n.36 (D.C. Cir. 1990)).  "The linchpin inquiry is whether

'the agency is able to determine precisely what records are being requested,'" Dale v. IRS, 238 F.

Supp. 2d 99, 104 (D.D.C. 2002) (quoting Tax Analysts v. IRS, 117 F.3d 607, 610 (D.C. Cir.

1997))—"[b]road, sweeping requests lacking specificity are not sufficient," id.  And although

"FOIA cases typically and appropriately are decided on motions for summary judgment," Citizens

for Resp. & Ethics in Wash. ("CREW") v. U.S. Postal Serv., Civ. A. No. 20-2927 (JDB), 2021

WL 3662843, at *3 (D.D.C. Aug. 17, 2021) (citation omitted), a motion under Rule 12(b)(6) is the

appropriate vehicle for determining whether a plaintiff's request reasonably describes the records

sought, see CREW v. U.S. Dep't of Just., 922 F.3d 480, 487–88 (D.C. Cir. 2019) ("[T]o plead a

plausible claim that an agency has 'improperly' withheld its records, we require a plaintiff . . . to

allege that it made a procedurally compliant request.").[3]

### Analysis

The FBI moves to dismiss plaintiffs' complaint as to Requests 1, 2, and 3.  The FBI

contends, as it did in its initial denials, that these requests "fail to reasonably describe the records

they seek or seek to impose unreasonable burdens on the FBI," and thus that the FBI has no

obligation to comply under FOIA.  Def.'s Mot. at 4.  This overarching argument has a different

flavor for each request, so, following the parties' lead, the Court will address each request in turn.

For the reasons explained below, the Court will grant the government's motion to dismiss as to

Requests 1 and 3 but deny it as to Request 2.

---

[3] Although the statute and caselaw frequently use the language of "jurisdiction," this refers not to subject-matter jurisdiction but to limits on a court's remedial power.  See, e.g., Cause of Action Inst. v. IRS, 390 F. Supp. 3d 84, 93–100 (D.D.C. 2019); accord Main St. Legal Servs., Inc. v. Nat'l Sec. Council, 811 F.3d 542, 566 (2d Cir. 2016). Thus, whether a defendant has improperly withheld agency records is properly decided on a Rule 12(b)(6) motion.

## I.   <u>Request 1</u>

Plaintiffs' first request seeks "records of all communications between the FBI and" the Governor, Lieutenant Governor, and Attorney General of Virginia, their respective "Office[s]," and "agents and employees of the same."   Compl. Ex. A at 1–2.   The request applies to all communications "that occurred between January 11, 2014 until the date [the FBI] begin[s] to process this request."   <u>Id.</u> at 2.   The FBI denied this request on the ground that it is "overly broad and . . . does not provide enough detail to enable personnel to locate records 'with a reasonable amount of effort.'"   Compl. Ex. B at 4.   This remains, in broad strokes, the agency's position.   In particular, the FBI contends that Request 1 fails sufficiently to identify the Virginia officials whose correspondence it requests, Def.'s Mot. at 10; that the request constitutes an improper "fishing expedition," <u>id.</u> at 11–12; and that, even if the request does "reasonably describe" the documents sought, its "shocking breadth would impose undue and unreasonable burdens on the FBI," <u>id.</u> at 12–13.

The Court need not reach the FBI's latter two arguments because it agrees with the first: Request 1's identification of whose communications are sought is insufficiently precise.[4]   The FBI

---

[4] Nonetheless, the Court notes that it is up to the agency to "provide a sufficient explanation as to why . . . a search would be unreasonably burdensome,'" <u>Ayuda, Inc. v. FTC</u>, 70 F. Supp. 3d 247, 275 (D.D.C. 2014) (cleaned up; citation omitted), and it usually may not rely on conclusory statements in a brief to carry that burden, <u>see, e.g.</u>, <u>Prop. of the People, Inc. v. U.S. Dep't of Just.</u>, 530 F. Supp. 3d 57, 63 (D.D.C. 2021) ("Courts have consistently found that 'merely claiming that a search would be "costly and take many hours to complete" is insufficient.'" (quoting <u>Anderson v. U.S. Dep't of State</u>, 661 F. Supp. 2d 6, 12 n.3 (D.D.C. 2009))); <u>Hall v. CIA</u>, 881 F. Supp. 2d 38, 53 (D.D.C. 2012) (refusing to "find a search unduly burdensome on conclusory statements alone" and noting that agency "g[a]ve[] no estimate of how long it would take to review" potentially responsive documents).   Rather, "[c]ourts typically demand 'a detailed explanation by the agency regarding the time and expense of a proposed search in order to assess its reasonableness." <u>Shapiro v. CIA</u>, 170 F. Supp. 3d 147, 156 (D.D.C. 2016) (quoting <u>Wolf v. CIA</u>, 569 F. Supp. 2d 1, 9 (D.D.C. 2008), and collecting similar cases).   <u>But see Am. Ctr. for L.& Just.</u>, 2021 WL 5231939, at *6–7 (concluding that a request was unduly burdensome on its face and without requiring the agency to submit an affidavit).   In this case, the FBI did not submit any explanation of how complying with defendant's request would be unduly burdensome, nor did it provide any evidentiary basis for that assertion in its motion.   <u>See</u> Def.'s Mot. at 12–13.   And even if it had, the Court might not have been able to consider that evidence without converting the present motion into one for summary judgment.   <u>See, e.g.</u>, <u>Breeze v. Kabila Inc.</u>, Civ. A. No. 21-753 (JDB), 2021 WL 5918678, at *15 (D.D.C. Dec. 15, 2021) ("The court may not . . . consider declarations not attached to the complaint itself without converting the motion into one for summary judgment.").

makes two arguments in this vein, but only one succeeds.  It first argues that, since eight people have served as Governor, Lieutenant Governor, or Attorney General over the requested time period, the request is "vague and ambiguous as to whether Plaintiffs seek all communications between each of them and the FBI . . . , only communications between these individuals and the FBI during their terms in office, or communications between a particular governor, lieutenant governor, or attorney general and the FBI."  Def.'s Mot. at 10–11.  Defendant's attempt to manufacture ambiguity in this way is unavailing.  There is only one reasonable interpretation of this request: plaintiffs seek communications between the FBI and then-incumbent officeholders and their staffs.  An agency's claim that it is hopelessly torn between a reasonable and an unreasonable reading of a FOIA request will not support a conclusion that the request is deficient. The Court easily concludes that this aspect of Request 1 "reasonably describes" the documents sought.

The Court agrees with the FBI's other contention, however: plaintiffs' request for correspondence between the FBI and "agents and employees" of the six listed officials and offices is so vague as to prevent an agency professional from "determin[ing] precisely what records are being requested," Tax Analysts, 117 F.3d at 610 (citation omitted).  See Def.'s Mot. at 10.  Request 1's "agents and employees" term has a wide range of plausible meanings.  On the one hand, the set of relevant "agents and employees" could be coterminous with the "Office[s]" of the Governor, Lieutenant Governor, and Attorney General, rendering the catch-all term superfluous.  On the other hand, the phrase could apply to every individual working for Virginia's executive branch, each of whom could plausibly be considered an "agent[] of" the Governor.  See Am. Ctr. for L.& Just., 2021 WL 5231939, at *6 (noting that the phrase "representative or agents" of the Secretary of

Homeland Security "encompasses each of the Department's 240,000 employees" because "[t]hey all carry out policy directives as pronounced by [the Secretary]").

Even more than the potential breadth of the request, however, the fatal flaw in Request 1 is that it provides no way to determine <u>which</u> of these plausible meanings to apply.  The problem is not that there might be gray area or close cases when applying the request's terms—it is instead that the criteria for resolving those close calls are obscure or nonexistent.  <u>Cf.</u> <u>United States v. McHugh</u>, Crim. A. No. 21-453 (JDB), 2022 WL 296304, at *16 (D.D.C. Feb. 1, 2022) (drawing a similar distinction in the context of constitutional vagueness doctrine).  By using a vague catch-all instead of identifying a discrete agency or set of employees, Request 1 embeds an intractable uncertainty preventing even the most conscientious and diligent processor from "determin[ing] precisely what records are being requested." <u>Tax Analysts</u>, 117 F.3d at 610 (citation omitted).  Put another way, a researcher presented with an email from someone at the FBI to a Virginia state employee would have very little guidance for determining whether the email is to an "agent or employee" of the Governor—the request "leave[s] the unfortunate FOIA processor . . . in a hopeless muddle without clear guidance about what documents are being sought." <u>Am. Ctr. for L. & Just.</u>, 2021 WL 5231939, at *6.

Plaintiffs seem to realize that their request is problematically vague, but rather than simply amending their request, they seek to obscure its terms.  In their administrative appeal and then in their opposition brief, they offer several suggestions for how the FBI could go about processing Request 1, recommending "search[ing] for emails sent to and received from addresses with the domain ending 'virginia.gov' and, within those, perhaps narrow[ing] the results to those containing signature blocks with the words 'governor' or 'attorney general.'"  Compl. Ex. C at 2–3; <u>accord</u> Pl.'s Opp'n at 4–5 (identifying specific email sub-domains the FBI could search).  Plaintiffs argue

that this additional specificity demonstrates that their request "seeks communications between a limited number of FBI personnel and a limited number of clearly identified Virginia officials." Compl. Ex. C at 2 (emphasis removed); see also Pls.' Opp'n at 7 ("[W]ere there any doubt about the limited scope of Plaintiffs' first request, their appeal letter provided clarification.").

For one, plaintiffs' recommendation of email domains to search does not grapple with the inherent vagueness of the phrase "agents and employees of the same."  Even if Request 1 were limited to the email domains plaintiffs suggest, their catch-all request for communications with all "agents and employees" would still be impermissibly imprecise.  Contra Pls.' Opp'n at 5 ("[T]hese sub-domains provide an exceedingly simple, straightforward, and reliable way 'to identify all agents and employees' of each office of Virginia government in question.").

More generally, however, plaintiffs cannot point to suggested research strategies as evidence that their request is narrower than its terms.  A brief cannot amend a FOIA request, e.g., Am. Oversight v. U.S. Dep't of Just., 401 F. Supp. 3d 16, 35 (D.D.C. 2019), and subsequent communication with an agency "must be reasonably clear that its sender intends it to be a new request" in order to limit the scope of a previous request, Corley v. Dep't of Just., 998 F.3d 981, 989 (D.C. Cir. 2021) (upholding agency's decision to "treat[] [plaintiff's] submission as what it purported to be: an administrative appeal with relevant supporting documents attached"); see also Nat'l Sec. Couns. v. CIA, 969 F.3d 406, 410 (D.C. Cir. 2020) ("NSC II") (refusing to narrow scope of request on the basis of its purpose as stated in requester's application for fee waiver); cf. Dillon v. U.S. Dep't of Just., 444 F. Supp. 3d 67, 85 (D.D.C. 2020) (holding that letter "submitted in the context of an administrative appeal" which "outright state[d] that Plaintiff sought 'two specific kinds of evidence'" such that agency personnel "would naturally construe the request as . . . seeking only those two items" served to narrow scope of request).

In this case, far from submitting a new request or specifically seeking a narrower set of documents, plaintiffs' administrative appeal plainly asserts that their original requests are valid and must be processed as submitted.  E.g., Compl. Ex. C at 2 ("Our clients' request is not overly broad, but instead provides more than sufficient detail to enable FBI to search for records.").  Their search suggestions are framed as just that: suggestions for how to process their original request. See, e.g., id. ("While we cannot guide FBI as to how to best search its indices for responsive information, . . . it would be reasonable for the FBI to assume that [responsive] communications either would have been with one of the FBI's three Virginia field offices . . . .").  So although plaintiffs' suggestions are good ones, neither their appeal nor their brief actually limits the scope of their request, which the agency is "unquestionably 'bound to read . . . as drafted, not as either agency officials or the requester might wish it was drafted.'"  Keeping Gov't Beholden, Inc. v. Dep't of Just., Civ. A. No. 17-1569 (FYP), 2021 WL 5918627, at *7 (D.D.C. Dec. 13, 2021) (cleaned up) (quoting Miller v. Casey, 730 F.2d 773, 777 (D.C. Cir. 1984)).  The FBI thus acted properly in "treat[ing] [plaintiffs'] submission as what it purported to be: an administrative appeal."  Corley, 998 F.3d at 989.

Because Request 1 uses such inherently imprecise terminology that the agency would not be able to determine precisely which documents are being requested, it does not reasonably describe the documents sought.  Plaintiffs have thus failed to state a claim as to that request, and the Court will grant the FBI's motion to dismiss with respect to Request 1.

## II.  **Request 2**

Plaintiffs' second FOIA request seeks records of "all communications between the FBI and the Virginia Department of State Police involving" two Virginia background check programs: "the so-called 'voluntary background check' established by Va. Code Section 54.1-4201.2" and "a so-called 'special permit for voluntary background check' or 'firearms-related permit' to be

established by the executive branch of government in Virginia."  Compl. Ex. A at 2.  Plaintiffs limited the request to communications "occur[ing] between July 1, 2015 until the date [the FBI] begin[s] to process this request," id., and they also included a footnote stating that "[a]t least some of these records will be housed by the FBI's Criminal Justice Information Law Unit," id. at 2 n.1 The FBI denied this request on the ground that it "d[id] not contain enough descriptive information to permit a search of our records" and so did not "reasonably describe" the documents sought. Compl. Ex. B at 6.

The FBI defends this conclusion with two arguments.  First, it contends that Request 2 is deficient because it "do[es] not identify by name the relevant Virginia government officials" and instead lists only "the Virginia Department of State Police."  Def.'s Mot. at 13.  The Court is not persuaded.  In stark contrast to Request 1's impermissibly vague demand for correspondence with all "agents and employees" of the listed officials, Request 2 names a particular state agency. Whereas an FBI processor confronted with a particular email would be at sea in determining whether it was to an "agent" of the Governor, determining whether the communication was with the Virginia State Police is a straightforward inquiry with clear and obvious criteria.  A FOIA request is not deficient just because it does not provide the name or email address of every individual whose communications are sought—the request's description need only be "reasonable" to implicate the agency's obligations under the statute.

The FBI's second objection to Request 2 centers on plaintiffs' use of the word "involving." "[S]ince life, like law, is 'a seamless web,' and all documents 'relate' to all others in some remote fashion," Def.'s Mot. at 14 (quoting Freedom Watch, Inc. v. Dep't of State, 925 F. Supp. 2d 55, 61 (D.D.C. 2013)), the FBI contends that there is a categorical rule barring all requests that use the phrase "relating to" (or similar phrases like "pertaining to" or, as here, "involving"), Def.'s Mot.

at 13–14 ("[R]equests seeking all records 'pertaining to,' 'relating to,' or 'regarding' a subject matter are insufficient under FOIA.").

That is not the law. "[W]hether a particular FOIA request 'reasonably describes' the records sought is a highly context-specific inquiry." Nat'l Sec. Couns. v. CIA, 898 F. Supp. 2d 233, 278 (D.D.C. 2012) ("NSC I"), aff'd, 969 F.3d 406 (D.C. Cir. 2020). That the reasonable description requirement should not be reduced to a categorical test is evident from its terms: courts should rarely deploy a bright-line rule—and particularly not one this expansive—when determining whether something is "reasonable." Moreover, the FBI's proposed linguistic litmus test would problematically narrow the permissible forms of a FOIA request. The FBI's rule would require the requester to either guess at a document's title or provide a list of terms "mentioned" or "referenced" in responsive documents in order to make even a facially valid request. See Def.'s Mot. at 14 (arguing that Request 2 is invalid because it is not "limit[ed] . . . to records 'mentioning' or 'referencing' the Virginia statutory regime."). But FOIA requesters are frequently in no position to know how an agency classifies its documents or what terminology the agency might have used—that is often why they are making a request in the first place.

The FBI's inhospitable approach is especially inappropriate in light of FOIA's "general philosophy of full agency disclosure," which is "premised on the notion that 'an informed citizenry is vital to the functioning of a democratic society.'" Gov't Accountability Project v. CIA, 548 F. Supp. 3d 140, 147 (D.D.C. 2021) (citations omitted). As the Senate Report accompanying the bill enacting the reasonable description requirement admonished, "[a]gencies should . . . keep in mind . . . that their superior knowledge of the contents of their files should be used to further the philosophy of the act by facilitating, rather than hindering, the handling of requests for records." S. Rep. No. 93-854, at 10 (cleaned up); see also NSC I, 898 F. Supp. 2d at 277 (expressing concern

that an agency might "abuse . . . FOIA's statutory language" by "systematically attempting to overuse the 'reasonably describes' requirement").  Although a requester must reasonably describe the documents sought, the recipient agency has a correlating duty to work in good faith to fulfill that request if reasonably possible.  See Dillon, 444 F. Supp. 3d at 84.

This attitude is even more important at the threshold stage: the FBI's argument means that an agency may refuse even to attempt to fulfill a request simply because it uses a phrase like "relating to" or "involving."  Adopting this interpretation "would result in a large swath of FOIA requests never even getting processed, even though they should be."  NSC I, 898 F. Supp. 2d at 277.  Indeed, plaintiffs point to at least one instance in which the FBI accepted and then fulfilled a FOIA request using the precise phrases it now claims are categorically invalid.  See Pls.' Opp'n at 13 (citing Compl. Ex. A [ECF No. 1-2], Gun Owners of Am., Inc. v. FBI, 20-cv-206-JMC (D.D.C. Jan. 27, 2020)); see also Dillon, 444 F. Supp. 3d at 78 (noting that FBI accepted a request for "[a]ll relevant records related to meetings [the subject] attended during September and October, 2001").  While the FBI's alleged inconsistency is not a reason to rule for plaintiffs if their request in this case is insufficient, it does at least suggest that not every request using the phrases the FBI now targets is categorically unfulfillable.

To be sure, many cases in this District have disapproved of requests using phrases like "related to" (though the FBI has pointed to no cases taking aim at the word "involving"),[5] and the Court recognizes that a request for documents "involving" a topic does indeed embed an inherent vagueness that complicates the task of compliance.  But the reasonable description requirement is neither so blunt nor so strict as the FBI suggests.  Although many—perhaps even most—requests framed in this way will fail to reasonably describe the records sought, the FBI's proposed rule

---

[5] See, e.g., Am. Ctr. for L. & Just., 2021 WL 5231939, at *5–7; Sack, 53 F. Supp. 3d at 163–65; Dale, 238 F. Supp. 2d at 104; see also Shapiro, 170 F. Supp. 3d at 154–55 (noting this trend in dicta and collecting cases).

declaring any request using the phrase "related to" or a similar term facially invalid is not supported by the caselaw, understates the agency's obligations in processing requests, and contravenes the spirit of FOIA.

The Court thus moves to the context-specific inquiry of whether Request 2 reasonably describes the documents sought.  The Court concludes that it does.  Although Request 2 does use the inherently vague term "involving," it also provides several specific limitations that would enable a processor to zero in on the set of documents at issue.  The request appears to seek communications with a well-identified state agency—the Virginia State Police—involving two different programs: "the so-called 'voluntary background check' established by Va. Code Section 54.1-4201.2," and "a so-called 'special permit for voluntary background check' or 'firearms-related permit' to be established by the executive branch of government in Virginia."  Compl. Ex. A at 2.  The request thus embeds four reasonably specific search terms, and it even limits the responsive documents to "communications . . . that occurred between July 1, 2015 until the date you begin to process this request."  Id.  Far from failing to "contain enough descriptive information to permit a search," Compl. Ex. B at 6, Request 2 identifies a discrete state agency whose communications are sought, provides a specific time period for the requested search, and includes four ready-made search terms.

The cases relied on by the FBI are not to the contrary.  This is not a case where the requester seeks all records relating to an immensely broad topic.  E.g., Freedom Watch, 925 F. Supp. 2d at 61 (rejecting request for "'all' records that 'refer or relate to any and all communications to or from President Obama, his administration, or the White House in general regarding China'" (cleaned up; citation omitted)); Freedom Watch, Inc. v. CIA, 895 F. Supp. 2d 221, 229 (D.D.C. 2012) (rejecting as "extraordinarily broad" a request for "any and all information 'leaked' or

otherwise provided about a draft version of the 2010 National Intelligence Estimate").  And the FBI is not asked "to undertake an investigation and then draw legal conclusions based on the investigation's findings" in order to determine which records are responsive.  <u>Freedom Watch</u>, 895 F. Supp. 2d at 229 (citation omitted) (rejecting requests referencing alleged "leaks" when requester had not defined term and "apparently intend[ed] for [processors] to make complicated determinations about whether crimes have been committed").

The FBI also points to <u>Latham v. U.S. Department of Justice</u>, 658 F. Supp. 2d 155 (D.D.C. 2009), and <u>Dale v. IRS</u>, 238 F. Supp. 2d 99 (D.D.C. 2002), but although the requests at issue in those cases did use broad relational language ("pertain in any form" in <u>Latham</u>, 658 F. Supp. 2d at 157, and "refer or relate in any way" in <u>Dale</u>, 238 F. Supp. 2d at 101), they are distinguishable from Request 2.  Equally, if not more, important to the outcome in those cases was the fact that the challenged requests required the agency to conduct a comprehensive search of <u>all</u> of their files, rather than just the ones likely to contain responsive documents.  The request in <u>Latham</u> demanded a "complete and thorough search of your filing system under your agency's control" and "d[id] not specify any particular DEA office to be searched, type of record, or author, recipient, or a date," with the result that "a vast majority of DEA offices [would] be tasked to conduct a search of their respective offices for any responsive records."  658 F. Supp. 2d at 157, 161 (cleaned up). And this Court's decision in <u>Dale</u> was based largely on the fact that the request at issue "d[id] not specify what records [the requester] [sought], for what years, and located at which office of the IRS."  238 F. Supp. 2d at 104; <u>accord id.</u> ("Absent some description of the actions the agency may have taken against him . . . , the particular records sought, and any relevant dates and locations, agency employees would not know where to begin searching.").

This is not such a case.  Although Request 2 does ask for communications between "the FBI" and the Virginia State Police, it does not require the FBI to search all of its files, nor would doing so make any sense—it would be irrational for the agency to canvass the files of the Anchorage field office looking for communications with the Virginia State Police involving a specific Virginia law.  Indeed, Request 2 even directs the FBI to a specific location for responsive records: "[a]t least some of these records will be housed by the FBI's Criminal Justice Information Law Unit."  Compl. Ex. A at 2 n.1.

Between Request 2's citation of a specific statutory provision, its inclusion of multiple search terms, its delimited time frame, and its clear identification of which state agency's communications are requested, the Court concludes that it reasonably describes the records sought, despite its use of the word "involving."  While agency personnel are not required to deploy clairvoyance, they are obligated to use "reasonable effort" in fulfilling requests.  As such, an agency may not refuse even to begin searching for documents just because the requester did not spell out its requested search parameters.  The Court concludes that an FBI professional familiar with the subject matter of the request could, with the exercise of reasonable effort, craft a search for responsive documents that would satisfy the agency's obligations under FOIA.  Accordingly, the Court will deny the government's motion to dismiss plaintiffs' complaint with respect to Request 2.

## III.  **Request 3**

The final FOIA request challenged here, Request 3, seeks "records related to whether Virginia's voluntary background check system and its implementation complies with 28 C.F.R. Section 25.6."  Compl. Ex. A at 2.  The FBI rejected this request, telling plaintiffs that "FOIA does not require federal agencies to answer inquiries" and that "[t]he questions posed in the referenced letter are not FOIA requests because they do not comply with the FOIA."  Compl. Ex. B at 8.

16

Along those lines, the agency now seeks to dismiss plaintiffs' complaint with respect to Request 3 because it (a) "contains the improper formulation 'all records relating to' a subject matter," Def.'s Mot. at 15, and (b) "appears to ask for FBI's determination as to whether Virginia's voluntary background check complies with a federal regulation" and thus "in essence propounds an interrogatory," id. at 15–16.

Taking the FBI's second argument first, an agency may not reject a FOIA request that on its face seeks only pre-existing documents just because it implicitly asks a question.  In Evans v. Federal Bureau of Prisons, 951 F.3d 578 (D.C. Cir. 2020), the D.C. Circuit held that "an agency may not refuse to comply with a FOIA request simply because the request is phrased in the form of a question," 951 F.3d at 583—"[i]nstead, the agency should determine whether, construing the request liberally, 'it in fact has created and retained' responsive records," id. at 584 (quoting Kissinger, 445 U.S. at 152).  In other words, what matters is not the form of the request but whether compliance would require the creation of new documents.  This understanding of an agency's obligations finds support in several earlier cases from this District.[6]  If directly asking a question is no basis to deny a request, then a fortiori a request seeking only pre-existing documents cannot be summarily denied because it "in essence propounds an interrogatory."  Def.'s Mot. at 16 (emphasis added).

---

[6] See, e.g., Hicks v. Exec. Off. for U.S. Att'ys, 12 F. Supp. 3d 25, 29 (D.D.C. 2013) (rejecting claim that agency was required to compute and produce numbers not present in retained documents because "the Court cannot compel defendant to compile information to address what are essentially questions"); Hudgins v. IRS, 620 F. Supp. 19, 20–21 (D.D.C. 1985) (dismissing request for "'documents' describing . . . whether a social security number is required on a federal tax return to obtain a benefit under the Social Security Program" on ground that request was an "effort to secure legal research regarding the Internal Revenue Code from the I.R.S." such that "plaintiffs' request could [not] be construed to embrace existing documents"); cf. Hall & Assocs. v. U.S. Env't Prot. Agency, 83 F. Supp. 3d 92, 101–02 (D.D.C. 2015) (rejecting request for "all records or factual analyses that show [eight listed statements are] incorrect" as "[a]t best . . . questions or interrogatory-like requests" and "[a]t worst . . . a trap," such that "[w]hile the requests nominally requested documents, EPA properly construed them as not adequately describing the records sought").

The FBI relies heavily on <u>Judicial Watch, Inc. v. Department of State</u>, 177 F. Supp. 3d 450 (D.D.C. 2016), <u>aff'd on other grounds</u>, 681 F. App'x 2 (D.C. Cir. 2017), which rejected a request for "[a]ny and all records that identify the number and names of [State Department employees] from January 20, 2009 to the present who used email addresses other than their assigned 'state.gov' email addresses to conduct official State Department business."  177 F. Supp. 3d at 453.  But <u>Judicial Watch</u> is perfectly consistent with <u>Evans</u>.  While the court commented that the request at issue was "really a question," <u>id.</u> at 455, the crux of its analysis was that, since "FOIA is a mechanism to obtain access to records" and "does not require agencies to create documents," "the State Department was not obligated to answer the Plaintiff's question <u>by compiling a list</u> of State department officials who used private email addresses to conduct Department business," <u>id.</u> at 456 (citations omitted; emphasis added).[7]  Tellingly, the case on which <u>Judicial Watch</u> relied most heavily had a similar (and similarly limited) holding: that an agency was not obligated to create a new document in response to a FOIA request.  <u>Id.</u> (citing <u>Amnesty Int'l v. CIA</u>, No. 07 Civ. 5435 (LAP), 2008 WL 2519908, at *12–13 (S.D.N.Y. June 19, 2008)).  In short, the Court finds no support in the caselaw for the proposition that an agency may refuse to process a request which, on its face, seeks only pre-existing documents and does not require the creation of new documents.

But this conclusion alone does not save Request 3.  The FBI also points to the request's vagueness—in particular its use of the phrase "related to"—as a reason why it fails to reasonably describe the documents.  Although, as discussed above, there is no categorical rule against requests for documents "related to" a topic, it will be the unusual (and unusually specific) request of that type that satisfies FOIA's reasonable-description requirement.  While Request 2 meets that bar, Request 3 does not.  Unlike Request 2, Request 3 is not limited to FBI communications with a

---

[7] Of course, to the extent that <u>Judicial Watch</u> did hold that a request nominally seeking existing documents may be rejected because it implicitly asks a question, it is contrary to <u>Evans</u>.

specific state agency, and it contains no parameters pointing the agency to search certain locations or time periods.  Instead, Request 3 is a request for <u>all</u> documents "related to" the Virginia scheme's compliance with 28 C.F.R. § 25.6, a category that plausibly includes any and all documents interpreting § 25.6 as well as every document assessing the compliance of <u>any</u> background check regime, whether real or hypothetical and whether from Virginia or elsewhere.

Plaintiffs counter that Request 3 contains several <u>implicit</u> limitations.  Since the voluntary background check program was created during the Virginia General Assembly's 2016 legislative session, plaintiffs argue that Request 3 only seeks documents from after that session (though even plaintiffs fail to say exactly when that was).  Pls.' Opp'n at 15.  And because they seek only records relating to a Virginia program, plaintiffs assert that the agency could, for example, exclude the Denver and Omaha field offices from its search.  <u>Id.</u> at 15–16.

At the outset, these purported limitations are nowhere to be found in the request itself—as discussed above, plaintiffs may not rely on either their administrative appeal or their opposition brief to narrow the plain terms of their request.  More fundamentally, however, plaintiffs seem to think that Request 3 is already so inherently narrow that limitations to certain types of documents or to certain time periods are unnecessary or would be superfluous.  See Pl.'s Opp'n at 15 (calling Request 3 "a narrow request involving a discrete category of records" and suggesting that plaintiffs seek only periodic FBI audits of state agencies' compliance with the requirements of the National Instant Criminal Background Check System). Plaintiffs thus misunderstand the true scope of Request 3.  For instance, the analysis in a hypothetical memo written in 2013 by a Special Agent in the Denver field office regarding the compliance of Colorado's background check regime with 28 C.F.R. § 25.6 would, by most interpretations, be "related to" whether Virginia's later program also complies.  Because Request 3 uses the broad phrase "related to" rather than a narrower

modifier like "discussing" or "containing an analysis of," and because it lacks any temporal or custodial limitation, the FBI, which is  "bound to read [the request] as drafted," <u>Miller</u>, 730 F.2d at 777, must construct a search that returns the hypothetical Denver memo as well as records closer to the core of plaintiff's request.

When a FOIA request is framed using the kind of intrinsically expansive terms used in Request 3, these kinds of limitations are far from superfluous—they are essential to give the FBI adequate guidance in locating responsive documents.  Indeed, without qualifications of this type, Request 3 resembles not the sufficiently narrow Request 2 but the request rejected in <u>Dale</u>: it seeks all documents relating to a topic (there, the requester; here, whether Virginia's background check program complies with 28 C.F.R. § 25.6) and provides no basis on which the agency could narrow the places or time periods it would have to search.  <u>See</u> <u>Dale</u>, 238 F. Supp. 2d at 104–05; <u>see also</u> <u>NSC I</u>, 960 F. Supp. 2d at 162–63 (holding that request for "all . . . records pertaining to the IBM supercomputer Watson" was "overly broad because it would require the CIA to search every office for any documents containing the word 'Watson' because any component is equally likely to have responsive records." (internal quotation marks and citation omitted)).  Between the inherent vagueness of "related to" <u>and</u> the lack of any temporal or custodial limitation on the set of responsive documents, Request 3 is distinguishable from Request 2 and fails to provide adequate guidance for FBI personnel in locating the documents sought.  Accordingly, the Court will grant the FBI's motion to dismiss with respect to Request 3.

## <u>Conclusion</u>

For the reasons explained above, the Court concludes that Request 1 fails to reasonably describe the records sought, as it embeds a fundamental uncertainty about whose communications are requested.  The Court also rejects Request 3 as insufficiently precise, as it seeks all documents

related to a certain question without providing further limitations or providing the FBI with a basis to narrow its search.  But despite using the word "involving," Request 2 does reasonably describe the records sought thanks to its inclusion of a discrete state agency whose communications are requested, specific search terms, explicit temporal parameters, and sufficient basis for the agency to narrow which custodians it must search to find responsive records.  The Court will therefore grant in part and deny in part the government's motion to dismiss.  An accompanying Order will issue on this date.

_____/s/_____
JOHN D. BATES
United States District Judge

Dated: <u>March 23, 2022</u>